In the Matter of the Foreclosure of Tax Liens by COUNTY OF BROOME. COUNTY OF BROOME, Respondent; DOUGLAS H. RITTER, Appellant, et al., Respondent. [927 NYS2d 239]—

Stein, J.

Respondents are the owners of real property in the City of Binghamton, Broome County. In 2003, the City issued several orders to respondent Douglas H. Ritter (hereinafter respondent) directing him to comply with Property Maintenance Code of New York State § 302.4 (see generally 19 NYCRR 1226.1) with respect to the subject property, which purportedly had high grass. The orders directed respondent to correct the violation within 48 hours of receipt thereof.[1] They further notified respondent that failure to do so by a designated reinspection date would result in the issuance of a court appearance ticket, the City would make arrangements to correct the violation, a bill would be sent for the work done by the City and failure to pay the bill would result in the amount due becoming a lien on the property (see Code of the City of Binghamton § 265-13 [J] [2]). In addition, the orders provided that if respondent needed any clarification, he could call the inspector at a designated telephone number. Respondent alleges that, upon his receipt of each order, he mailed a letter—each of which was virtually identical—to "Binghamton Housing Code Enforcement"

1. Correspondingly, Code of the City of Binghamton § 265-13 (H) (1) requires, as pertinent here, that property be maintained to prevent health or safety hazards and, specifically, that property be kept trimmed and mowed, with the height of grass and weeds not to exceed 10 inches. Upon a property owner's failure to comply with an order of the City's Code Enforcement Bureau to cut and remove grass, the City may do so and may bill the owner therefor (see Code of the City of Binghamton § 265-13 [J]).

requesting, among other things, a hearing "or other form of legal due process" on the violation. However, respondent did not set forth any defense to the alleged violations; indeed, he stated that he would not do so until he received a "Supporting Deposition." In response to some of those letters, the City Fire Marshal explained that respondent's request for a hearing was premature. The First Assistant Corporation Counsel for the City averred that he also advised respondent on several occasions that the City would be willing to file criminal charges in Binghamton City Court, which would entitle respondent to a hearing, but would also potentially subject him to additional fines.

Respondent received another order to comply with the Property Maintenance Code for high grass in 2005[2] and claims that he again requested a hearing.[3] It is undisputed that he did not call the inspector or take any steps to correct the alleged violation and the City arranged to have the grass mowed and sent respondent a bill for the work. The billing notice also contained a statement that "[i]f you have any questions regarding this matter, you may contact the Fire Marshall/Code Enforcement Office," and a telephone number was provided. Respondent again failed to communicate the nature of his objections—either by telephone or in writing—and refused to pay the bill, which thereafter became a lien on the property. The City returned the checks that respondent sent for the 2006 property taxes, which did not include the amount due for the 2005 cleanup bill that had been added to the tax bill. In April 2008, petitioner commenced the instant tax lien foreclosure proceeding. Following joinder of issue, petitioner successfully moved for summary judgment and an order and judgment of foreclosure was entered accordingly. Respondent now appeals.

Preliminarily, we note that foreclosure proceedings commenced pursuant to RPTL article 11 enjoy a presumption that unpaid tax liens are valid (*see* RPTL 1134; *Kennedy v Mossafa*, 100 NY2d 1, 8 [2003]; *Matter of Village of Fleischmanns [Delaware Natl. Bank of Delhi]*, 77 AD3d 1146, 1147 [2010]). Respondent does not challenge the validity of the tax lien foreclosure proceeding or the City's authority to convert the unpaid mowing bill into a lien on his property; instead, his arguments are

---

2. The 2005 order to comply that led to the lien at issue is not in the record. However, previous orders to comply that were served upon respondent for other violations do appear. Neither the City nor respondent contends that these differ in any significant way from the 2005 order.

3. The record contains an unsigned copy of respondent's letter, which the City denies receiving.

directed at the validity and propriety of the underlying bill for $50 and the failure to provide him with a hearing to contest that bill.

It is a fundamental principle of due process that any governmental deprivation of property must be preceded by "notice and some opportunity to respond" (*Matter of Prue v Hunt*, 78 NY2d 364, 369 [1991]; *see Cleveland Bd. of Ed. v Loudermill*, 470 US 532, 542 [1985]; *Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 313 [1950]). What process is due in a particular case "depends upon the nature of the interest involved and need not be elaborate" (*Matter of Richie v Coughlin*, 148 AD2d 178, 183 [1989], *appeal dismissed* 75 NY2d 765 [1989], *lv denied* 75 NY2d 707 [1990], *cert denied* 498 US 824 [1990]). Here, the City notified respondent that he could call City personnel with regard to both the order to comply and the mowing bill. In our view, inasmuch as the interest involved at that point was a relatively small fee for cutting respondent's grass, this provided him with a sufficient opportunity to respond. Nonetheless, respondent did not avail himself of that opportunity inasmuch as he failed to communicate the nature of his objections to the order and/or the bill.[4] Under these circumstances, the "failure to conduct a hearing did not deprive [respondent] of due process" (*Matter of Sumkin v Town of Babylon*, 238 AD2d 430 [1997], *appeal dismissed* 91 NY2d 848 [1997]), and the proper vehicle for challenging the City's assessment of the mowing charge was a timely CPLR article 78 proceeding (*see NYCTL 1998-2 Trust v T. Jan Realty Corp.*, 63 AD3d 810, 811 [2009]; *Trager v Town of Clifton Park*, 303 AD2d 875, 877-878 [2003]). Had the City failed to consider any substantive objections made by respondent, respondent could have obtained judicial review of the merits thereof in such a proceeding. Inasmuch as respondent failed to commence a CPLR article 78 proceeding within the four-month period established by law (*see* CPLR 217 [1]; *see Matter of Luyster Cr., LLC v New York State Pub. Serv. Commn.*, 82 AD3d 1401, 1402 [2011], *lv granted* 17 NY3d 703 [2011]; *Trager v Town of Clifton Park*, 303 AD2d at 877), he is now precluded from challenging the charge.

Respondent's remaining contentions have been examined and found to be without merit.

Spain, J.P., Kavanagh, Garry and Egan Jr., JJ. concur. Ordered that the order and judgment is affirmed, without costs.

---

4. While the Code of the City of Binghamton does not explicitly require the City to consider any such objections, there is nothing in the record to indicate that it would not have done so.