■ In the Matter of RICHARD E. KAPLAN, Appellant, v STATE OF NEW YORK et al., Respondents. [608 NYS2d 366] — Mercure, J. Appeal from a judgment of the Supreme Court (Conway, J.), entered August 10, 1993 in Albany County, which, in a proceeding pursuant to CPLR article 78, granted respondents' motion to dismiss the petition on the ground of laches.

In 1987, the Legislature enacted legislation authorizing respondent New York State Medical Care Facilities Finance Agency (hereinafter MCFFA) to issue up to $2.2 billion worth of 30-year bonds to finance the construction and improvement of mental hygiene facilities *(see,* McKinney's Uncons Laws of NY § 7419-a). Although the State is expressly not liable for notes or bonds issued by MCFFA (McKinney's Uncons Laws of NY § 7416 [7]), State Finance Law § 97-f (6) authorizes the Comptroller and the Commissioner of Taxation and Finance (hereinafter the Commissioner) to pledge or assign money in the Mental Health Services Fund to secure payment, subject to legislative appropriation, of financing agreements relating to the Mental Health Services Improvement Program. MCFFA was also authorized to enter into financing agreements with respondent Facilities Development Corporation (hereinafter FDC) whereby MCFFA would finance construction or improvement of mental hygiene facilities (McKinney's Uncons Laws of NY § 7419-a [2] [a]) and lease them to FDC for use by the

Department of Mental Hygiene (hereinafter the Department) (McKinney's Uncons Laws of NY § 4409).

Pursuant to the foregoing legislation, FDC, MCFFA and the Department entered into contracts whereby MCFFA agreed to issue bonds to finance construction and improvement of facilities by FDC and to lease the completed facilities to FDC for use by the Department. In addition, the Comptroller and the Commissioner agreed to pay MCFFA the annual payments due under the lease and loan agreement subject to appropriation by the Legislature. In accordance therewith, between October 1978 and October 1992 MCFFA issued bonds in the principal amount of $1.6 billion and on November 1, 1992 issued additional series F bonds worth $110,810,000. Petitioner commenced this proceeding in June 1993 to prohibit disbursement of moneys to bondholders of 1992 series F bonds "where such monies represent any amounts of Federal Medicaid funds the state legislature has not appropriated for such purpose prior to the sale of said bond[s]" upon the ground: "That to the extent the aforementioned bonds permit the state directly or indirectly to appropriate money after the sale of these bonds and in excess of anticipated revenues which should be determined prior to the sale of the bonds the language contained in the aforementioned bond issue is unconstitutional. The language in this bond issue permits the state to appropriate Federal Medicaid monies as needed to pay off the bonded indebtedness resulting from the sale of these bonds. The allowance of the appropriation of future Federal Medicaid funds to pay the bondholders increases the debt obligation of the state without a public referendum." Respondents moved to dismiss the petition, *inter alia,* as barred by laches. Supreme Court granted the motion on that basis and petitioner now appeals.

We agree with Supreme Court's conclusion that the petition is barred by laches and, accordingly, affirm. In *Matter of Schulz v State of New York* (81 NY2d 336), the Court of Appeals determined that a challenge to a financing scheme embodied in legislative enactments similar to those involved here, brought 11 months after the enactment, was barred by laches. The Court found that the issuance and sale of bonds in reliance upon the enactment and the concomitant possibility that the requested recall of the bonds would cause "traumatic disturbance to settled matters of public finances and governance" necessitated dismissal of the proceeding *(supra,* at 348). Similarly, this Court recently held that laches barred a challenge to another "moral obligation" bond plan where the

proceeding was brought two years after the enactment of enabling legislation *(Schulz v State of New York,* 193 AD2d 171).

The instant case presents an even more compelling basis for dismissal, as it was brought approximately six years following enactment of the legislation authorizing the challenged financing plan and nearly seven months following the sale of the challenged bonds. We are not persuaded by petitioner's efforts to distinguish this from the controlling precedents cited above. Although petitioner does not seek to invalidate past bond sales, the requested prohibition of future disbursements tied to Federal Medicaid moneys would undoubtedly have a substantial effect on the financing mechanism as a whole *(see, Matter of Schulz v State of New York, supra,* at 348-349; *Schulz v State of New York, supra,* at 177-178). Finally, we are unpersuaded by the argument that the proceeding is not barred by laches because it was commenced promptly following the Court of Appeals' grant of standing in *Matter of Schulz v State of New York (supra).* Notably, the petition in that case was itself dismissed on the ground of laches.

Cardona, P. J., White, Casey and Weiss, JJ., concur. Ordered that the judgment is affirmed, without costs.